# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| YVETTE BARBARA BALDWIN,<br>Plaintiff, | Case No. 1:11-cv-804<br><br>Weber, J. |
| vs | Litkovitz, M.J. |
| MARSHALL & ILSLEY FINANCIAL<br>CORPORATION,<br>Defendant | **REPORT AND<br>RECOMMENDATION** |

Plaintiff, a resident of Cincinnati, Ohio, has filed a *pro se* complaint against Marshall & Ilsley Financial Corporation ("M&I"), also known as M&I Bank, located in Indianapolis, Indiana. (*See* Doc. 1, Complaint).[1] By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma*

---

[1] Although plaintiff has indicated in the title of the complaint that multiple defendants have been named as parties to this lawsuit, she has identified only one defendant–Marshall & Ilsley Financial Corporation, also known as "M&I Bank"–in the substance of the complaint. (*See* Doc. 1, Complaint, p. 3).

*pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke*, 490 U.S. at 328-29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915 (e)(2)(B)(ii). Although a plaintiff's *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and

1915A(b)(1)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

In this case, plaintiff has alleged the following facts in an affidavit attached to the complaint for the purpose of substantiating her "heredity, birthright, and biological inheritance:" her mother "is of Egyptian Greek Jewish Royal descent," and her father "is of Greek Jewish Royal descent;" in her early years, she "travelled abroad to accept the Thrones of Israel and Greece;" she "learned as [she] matured in life that the honor of Queen of the Country of Israel" was presented to her; she is the "owner of land deeds in the Country of Israel," as well as in the "Country of Greece;" and she is "the holder of an edict to the Country of Greece." Plaintiff further avers:

> During my time in Greece[,] I was honored with several edicts from various countries. . . . England, Israel, India, Egypt . . . are some of the country listings that can be found in the Encyclopedia Britannica published in the late 1960's through mid 1970's. The library of Congress has a listing of the various edicts

3

awarded to me. I have made attempts to obtain information from the Library of Congress files through their librarian requestor system; I have not received a response that provided me with the information that I know to be on file.

During my early years[,] I worked as a Royal with the assistance of my mother and various family members and friends. I interviewed with Walter Cronkite at WCPO TV 9 (ABC) in the early to mid 1960's. At the time I was of pre-school age; interviewing as the Greek Royal Queen. I was given an Oscar/Emmy award for the interview and other appearances. The legal documentation, awards and collectibles information were placed on file for me at WCPO TV 9 (ABC); to obtain as an adult.

[]I attended Schiel Elementary School. . . . The Greek Government made arrangements with the school and my parents to meet with me . . . during homeroom. I was given permission to spend the entire day with Greek Official Mr. Onassis, a film crew, and another student from Schiel Elementary School. . . . This was a very exciting time for me; I was prepared by my parents to expect to receive an award/gift. During the day we travelled to various locations filming various roles represented through actions. The filming was somewhat along the lines of a documentary. The award/gift presentation was made to Yvette Baldwin only by Mr. Onassis. I was presented with a large check award for approximately $1.6 Billion dollars. . . . Mr. Onassis advised that the Royal Kings wanted me to stay out of trouble in order to be able to use the gift/award without any restrictions etc.

This is significant due to the fact that I am a Greek Royal Descent from 13 Royal/Jewish lines. I am a direct Royal descent from the Royal line of Abraham, Isaac, and Jacob; the Royal descent listing given to me has me listed as a descendant from several Kings and Queens. . . . This complaint/petition/pleading is based on the foundation that I have established with my Royal descent identity as the rightful and legal holder of the Greek Edict(s)/Royal orders that were placed on file for me at the Cincinnati Bar Association in the mid to late 1960's. I have made several attempts to check on the Edict(s)/Royal Orders over the past several years. I have been advised by members of the Cincinnati Bar Association Staff that the[y] were unable to locate the Edict(s)/Royal Orders. . . . I have made several attempts to [c]ontact Greece and Israel through the embassies. The personnel did not understand what I needed, and they were lacking in the knowledge of my identity in association with my Royal role.

The circumstances surrounding this complaint/petition/pleading are suspicious in nature. I have checked on various assets that I was awarded as a young child; . . . I have been advised on several occasions that the information can no longer be found or it simply does not exist. I have filed various complaints that in my

4

> opinion were simply stated and straight to the point; I have had all filings dismissed. . . . I have checked on various historical references that listed me as Royal Queen[;] it appears as if I have almost been written/blocked out of history. In the State of Ohio whenever I check for a record I am advised that the records cannot be found. In the states of Indiana and Wisconsin I was advised that the record of my billionaire financial holdings does not exist. . . .
>
> I have been advised by citizens throughout the tri-state area that (M&I Bank) Marshall and Ilsley Financial Corporation et al. had threatened to cause serious physical harm to my life. . . . The more serious criminal attempts against my physical wellbeing/life have occurred when I have walked to and from the bus routes for transportation. I have been almost run o[ver] by drivers that spot me walking and directly aim their vehicles right at me stepping on the accelerator to run me down. I have barely escaped critical injury/death several times. . . . I travelled to Newport on the Levy to attend a show [and] while in the studio area a patron sitting nearby yells out to me that Marshall & Ilsley Financial Corporation et al. has a hit man waiting for me to come out and talk to him in the lobby. The threats, warnings, and suspicious activity are too numerous to name. I simply attempted to access my financial account with M&I Bank and 1 of the worst assaults on my life began.

(Doc. 1, Complaint, "Affidavit By Royal Public Official Ms. Yvette Barbara Baldwin").

In the "Statement Of Claim" portion of the complaint, plaintiff states that the named defendant is conspiring "to commit murder against the life of the plaintiff," of which the plaintiff was made aware "through hearsay statements circulating throughout the general community for several years." (Doc. 1, Complaint, p. 3). She seeks as relief: (1) "a legal investigation, equitable remedy, . . . and immediate redress of grievances;" (2) "immediate relief in the form of an approved financial loan through a local Hamilton County bank" in the amount of $550,000; and (3) verification of plaintiff's assets with WCPO TV 9 (ABC) and M&I, as well as assets listed on file with the Hamilton County Clerk of Courts as "part of a Royal Display/Setup located in the Courthouse." (Doc. 1, Complaint, p. 3).

Plaintiff's allegations do not state a claim with an arguable basis in fact or law, or

alternatively, are insufficient to state a claim upon which relief may be granted by this Court. Petitioner asserted the same factual "background" allegations pertaining to her "heredity, birthright, and biological inheritance," including her royal status in Israel and Greece and the 1.6 billion dollar gift purportedly awarded to her by "Mr. Onassis" when she was a child, in a prior complaint filed with this Court. *See Yvette Barbara Baldwin v. Cincinnati Bar Association, et al.,* Case No. 1:11-cv-71 (S.D. Ohio) (Barrett, J.; Bowman, M.J.) (Doc. 7). That complaint was dismissed as frivolous on March 14, 2011, because the allegations were found to be "delusional, rising to the level of the irrational or 'wholly incredible.'" *See id.* (Doc. 8, pp. 5-6; Docs. 13, 14). The undersigned similarly concludes that most, if not all, of plaintiff's allegations are "fantastic or delusional" and that, therefore, the instant complaint is subject to dismissal at the screening stage because it raises frivolous claims. *See Hill,* 630 F.3d at 471 (quoting *Neitzke,* 490 U.S. at 328); *see also Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199.

Even assuming, *arguendo,* plaintiff's allegations are rational enough to pass the "delusional" test, the complaint should be dismissed because it is identical to and thus duplicative of another currently pending complaint filed on November 14, 2011 with the United States District Court for the Southern District of Indiana, where defendant is located. *See Yvette Barbara Baldwin v. Marshall & Ilsley Financial Corporation, et al.,* Case No. 1:11-cv-01514-WTL-MJD (S.D. Ind.) (Doc. 1). The Supreme Court has recognized that "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" have given rise to the general principle that duplicative litigation in the federal court system is to be avoided. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976). The district court, therefore, has the inherent power

6

to dismiss an action when it is duplicative of another action pending in the federal court. *See Green v. Quarterman,* No. Civ. A. H-08-553, 2008 WL 2489840, at *2 (S.D. Tex. June 18, 2008) (citing *Remington Rand Corp.-Delaware v. Bus. Sys. Inc.,* 830 F.2d 1274, 1275-76 (3rd Cir. 1987) (and Supreme Court cases cited therein)); *see also Chrysler Credit Corp. v. Marino,* 63 F.3d 574, 578 (7th Cir. 1995) (quoting *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993)) ("A federal suit may be dismissed for 'reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'")). Such power should be exercised in this case, given that the action pending in Indiana where defendant resides is identical to the one pending before this Court.

In any event, the complaint is subject to dismissal on the alternative ground that it is barred from review under the doctrine of *res judicata*, or claim preclusion, because plaintiff previously filed a complaint with this Court against the same defendant and its affiliates, which was dismissed with prejudice on July 1, 2011 for lack of prosecution. *See Yvette Barbara Baldwin v. M&I Financial Corp., et al.,* Case No. 1:10-cv-952 (S.D. Ohio) (Barrett, J.; Litkovitz, M.J.) (Docs. 5, 17, 22, 23). In dismissing the prior complaint, the district court certified pursuant to 28 U.S.C. § 1915(a) that an appeal "would not be taken in good faith" and, therefore, denied plaintiff leave to appeal *in forma pauperis*; the court stated that plaintiff remained free, however, "to apply to proceed *in forma pauperis* in the Court of Appeals." *Id.* (Doc. 22, p. 2; Doc. 23). On August 26, 2011, plaintiff filed an unsigned notice of appeal to the United States Court of Appeals for the Sixth Circuit. *Id.* (Doc. 25). The Sixth Circuit assigned a case number to the appeal on August 31, 2011. No further action has been taken in the pending appellate matter since the case number was assigned.

"The doctrine of *res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in [that] prior action." *Harris v. Ashley,* No. 97-5961, 1998 WL 681219, at *2 (6th Cir. Sept. 14, 1998) (per curiam) (quoting *Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir. 1995), in turn quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)). The doctrine applies not only to issues which were actually raised and litigated in the prior action, but also to any issues "which the parties, exercising reasonable diligence, might have brought forward at the time." *Id.* at *3 (internal citation and quotation omitted); *see also Parker v. Gibbons,* 62 F. App'x 95, 96 (6th Cir. 2003) (citing *J.Z.G. Res., Inc. v. Shelby Ins. Co.,* 84 F.3d 211, 213 (6th Cir. 1996)) ("Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated as well as every theory of recovery that could have been presented."). Consideration of a subsequent complaint is precluded under the *res judicata* doctrine if: (1) a final decision was rendered on the merits in the first action by a court of competent jurisdiction; (2) the subsequent action involves the same parties, or their privies, as the first action; (3) the second action raises issues or claims which were either actually litigated or should have been raised and litigated in the prior action; and (4) there is an "identity" between the causes of action to the extent the "claims arose out of the same transaction or series of transactions, or . . . the same core of operative facts." *Browning v. Levy,* 283 F.3d 761, 771-72, 773-74 (6th Cir. 2002) (internal citation and quotation omitted); *see also Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 528 (6th Cir. 2006).

The undersigned finds that all four elements necessary for the application of the *res*

*judicata* doctrine are present in this case. First, the dismissal of plaintiff's prior complaint with prejudice for lack of prosecution under Fed. R. Civ. P. 41(b) operated as an adjudication on the merits for *res judicata* purposes. *See, e.g., Costello v. United States,* 365 U.S. 265, 286 (1961) ("[T]he dismissals enumerated in Rule 41(b) which operate as adjudications on the merits . . . primarily involve situations in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the Court's reaching them. It is therefore logical that a dismissal on one of these grounds should, unless the Court otherwise specifies, bar a subsequent action."); *Butler v. Dep't of Justice,* 492 F.3d 440, 443 n.6 (D.C. Cir. 2007) (noting that although a dismissal for failure to prosecute under Fed. R. Civ. P. 41(b) "is not, in fact, a decision on the merits" of a claim, it "functions as such for the purposes of claim preclusion").[2] *Cf. Daniels v. Trans Union Credit Bureau,* No. 1:07cv2415, 2007 WL 4180672, at *5 & n.36-37 (N.D. Ohio Nov. 20, 2007) (noting that the Sixth Circuit's decision in *Catz v. Chalker,* 142 F.3d 279, 287 (6th Cir. 1998), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005), must be interpreted as meaning that *res judicata* applies in cases voluntarily dismissed with prejudice under Rule 41(a)(2)); *Harris, supra,* 1998 WL 681219, at *5 (dismissal with prejudice for lack of prosecution under Kentucky's Rule 41.02 "constitute[d] an adjudication upon the merits sufficient to support the application of *res judicata*").

Moreover, the judgment in the prior case is final. Although plaintiff filed a notice of

---

[2]*See also Harry v. Rodriguez,* 337 F. App'x 17, 17-18 (2nd Cir. 2009); *Color-Plus Leather Restoration Sys., L.L.C. v. Vincie,* 198 F. App'x 165, 166 (3rd Cir. 2006); *Bosley v. Chubb Inst.,* 516 F.Supp.2d 479, 482-83 & n.2 (E.D. Pa. 2007); *Griffin-El v. Beard,* No. 06-2719, 2009 WL 1229599, at *3 (E.D. Pa. Apr. 30, 2009) (and cases cited therein); *Alpha Fin. Mortg., Inc. v. Baugh,* Civ. Act. No. 09-814, 2009 WL 3681858, at *4 & n.6 (W.D. Pa. Nov. 3, 2009) (and cases cited therein); *Moutsinas v. Dep't of Educ. of New York,* No. 05 Civ. 3096(SHS), 2006 WL 1997637, at *3 (S.D.N.Y. July 18, 2006) (and cases cited therein).

appeal in that case, which is unlikely to proceed further given that the district court certified that an appeal would not be taken in good faith and denied plaintiff leave to appeal *in forma pauperis*, "it is well established that a final trial court judgment operates as *res judicata* while an appeal is pending." *Commodities Export Co. v. United States Customs Serv.*, 957 F.2d 223, 228 (6th Cir. 1992) (and cases cited therein); *see also Smith v. SEC*, 129 F.3d 356, 362 n.7 (6th Cir. 1997). *Cf. Kelley v. Bruzzese*, No. 2:10cv143, 2010 WL 817202, at *2 (S.D. Ohio Mar. 4, 2010) (Kemp, M.J.) (recommending that a complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2) because it was barred from consideration by the doctrine of *res judicata*).[3]

Finally, the instant case involves the same parties as the prior action; plaintiff's allegations were or could have been raised in the prior action; and the two actions arise from the same core of operative facts. The prior complaint differs from the instant action to the extent it did not contain any allegations about the M&I's purported "conspiracy to commit murder against the life of the plaintiff," but rather involved the claim that M&I and its affiliates improperly denied her access to a bank account that had been set up in her name by "Mr. Onassis." Plaintiff states in the complaint that the information giving rise to the new allegations has been "circulating around the general community for several years." It is thus clear from the face of the complaint that the evidence existed when plaintiff prepared and filed the prior civil lawsuit with this Court. The claims raised in both cases arise out of and are predicated on the same events and same operative facts. Therefore, plaintiff should have raised and litigated her "conspiracy to commit murder" claim in the prior action, and *res judicata* applies to bar the instant complaint.

---

[3]The Court takes judicial notice of the fact that the magistrate judge's Report and Recommendation to dismiss the complaint at the screening stage was adopted by the District Court in a final Order and Judgment filed on April 20, 2010. *See Kelley v. Bruzzese*, No. 2:10-cv-143 (Frost, J.; Kemp, M.J.) (Docs. 10, 11).

Accordingly, in sum, the Court concludes that the plaintiff's complaint, which contains delusional factual allegations, should be dismissed as frivolous. Alternatively, the complaint is subject to dismissal because (1) it is identical to and thus duplicative of another pending civil action filed by plaintiff against defendant in the United States District Court for the Southern District of Indiana in the case entitled *Yvette Barbara Baldwin v. Marshall & Ilsley Financial Corporation, et al.*, Case No. 1:11-cv-01514-WTL-MJD (S.D. Ind.); and (2) the doctrine of *res judicata* applies to bar consideration of the complaint, which raises claims that were or should have been raised in a prior lawsuit involving the same parties that was dismissed with prejudice on July 1, 2011 for lack of prosecution. *See Yvette Barbara Baldwin v. M&I Financial Corp., et al.*, Case No. 1:10-cv-952 (S.D. Ohio) (Barrett, J.; Litkovitz, M.J.) (Docs. 5, 17, 22, 23).

**IT IS THEREFORE RECOMMENDED THAT:**

1. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).[4]

Date: 11/23/2011
cbc

Karen L. Litkovitz
United States Magistrate Judge

---

[4]It is noted that plaintiff, a non-prisoner, would remain free to apply for *in forma pauperis* status in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

YVETTE BARBARA BALDWIN,
    Plaintiff,

vs

MARSHALL & ILSLEY FINANCIAL
CORPORATION
    Defendant.

Case No. 1:11-cv-804

Weber, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).